This is an action brought by plaintiff against defendant for breach of contract. The plaintiff alleges that during the life of the contract that he had from different parties bona fide offers to purchase the 150 acres of land, as set forth in the contract below.
The allegations in the complaint substantially were, and there was evidence to sustain them: That he paid under the contract a considerable sum of money in advertising the land for sale and made personal efforts to that effect. That he obtained:
(1) An offer by George M. Burns for farm $300.00 an acre, one-third cash, balance one and two years, secured by mortgage on the land. Also that Burns and Barnes offered $300.00 an acre for the whole farm, or $500.00 an acre for one tract of it, and $15,000 for 103-acre tract.
(2) Offer made by Wade Holley $45,000 cash.
(3) Offer made by Outlaw Bordner, $45,000 for tract, one-third cash, balance one and two years, secured by deed in trust on the land. *Page 150 
(4) Offer made by Revis, "his terms as I believe $10,000 in secured notes, and the balance in 1 and 2 or 1, 2 and 3 years, secured by deed in trust on the farm in question. It involved trading in $10,000 notes of R. B. Zagier, who is a merchant and lives in Asheville. Mr. Outlaw's financial worth was $250,000 to $300,000 at that time. Don't know exactly about the worth of Mr. Revis.
(5) Offer made by Mrs. R. D. McDonald now Mrs. Connally. She was a Coxe and when Mr. Coxe died she married a McDonald, now Mrs. Connally. Prior to her marriage she was Mary Connally, the daughter of old Colonel Connally, in Victoria. I took her there lots of times. She offered $45,000 for it, $300.00 an acre, one-third cash, balance, 1, 2, and 3 years. I communicated the offer to Mr. Green. He wouldn't take it, but Mr. Green told me to swap her the farm and give her $90,000 to boot for the building there by the Emporium Building, that she owned, he thought, but Mrs. Cheesborough, the sister of Mrs. Connally, owned it. I submitted it to Mrs. Connally and she submitted it to Mrs. Cheesborough. Mrs. Cheesborough said that she didn't want to make the exchange. I guess Mrs. Connally's worth at the time was a million dollars or more. All of the offers were made in the twelve months period set out in the contract. Mr. Outlaw's offer was the first. I made an offer on the farm, it is in writing signed by me."
Plaintiff also submitted an offer in writing. The defendant refused to accept any of the offers.
The contracts are as follows:
Asheville, N.C. 14 March, 1925.
"F. B. Ingle, agent, I, this day accept your proposition on the T. L. Johnson and wife, M. E. Johnson, purchasing 189 acres of land, more or less, known as the Johnson lands located in Mills River Township. I agree to the terms mentioned. The party of the first part is to have land surveyed and I am to pay one hundred dollars per acre to pay on delivery of good and sufficient title, one-fourth cash of purchase price to give deed of trust back on land for equal payments, one, two, three, four and five years. Notes bearing six per cent interest. Interest payable semiannually. I am attaching my check for one hundred and fifty dollars ($150.00) to show good faith, that being part purchase money. This deal is to be closed up on or before 1 May, 1925.
 J. R. REID. T. L. JOHNSON. M. E. JOHNSON.
Witness: F. B. Ingle.
I hereby transfer all my right, title and interest to Gay Green and F. B. Ingle.
 J. R. REID. *Page 151 
Asheville, N.C. 14 April, 1925.
"This form of contract by and between Gay Green, party of the first part, and F. B. Ingle, party of the second part. The party of the first part purchased the T. L. Johnson farm, containing 150 acres for $16,000, through the party of the second part with the understanding that both parties hereto are to share all profits equally above the purchase price of $16,000, and each party is to bear equally in all expense of handling and selling said farm. Provided a satisfactory sale can be made within twelve months from date.
 GAY GREEN. F. B. INGLE."
The plaintiff, among other things, alleges: "That as this plaintiff is advised, informed and believes, and so avers, that the refusal of the defendant to agree to any of said sales was not because the proposed purchaser was unsatisfactory nor that he was not ready, able and willing to comply with his proposal, nor that it was not such as would have produced a satisfactory sale, as contemplated between the parties. But that his claim of dissatisfaction, if any was merely pretense and not a fact, was feigned and not based upon an actual dissatisfaction, was in bad faith and was unlawful, fraudulent and arbitrary, done for the sole purpose of hindering, defrauding and cheating this plaintiff of his rights under said contract. That the title to said lands being in defendant, rendering the plaintiff unable to consummate any one of said sales without the cooperation and consent of the defendant, and by reason of said wrongful, unlawful, fraudulent and arbitrary conduct on the part of the defendant, in not accepting said sales or any one of them, this plaintiff lost the benefit of the profits that would have been derived from any one of said sales, one-half of which amounted to more than $14,500, with interest from 14 April, 1926. That as hereinbefore alleged, the plaintiff has an interest under said agreement, based upon a valuable consideration, and as such had a mutual interest in the sale of said lands, at a profit and the net proceeds derived therefrom, along with the defendant, and the defendant owed to the plaintiff a duty in the nature of a trustee, to conserve said interest, and to act with reason, diligence and prudence, giving due consideration to the plaintiff's rights, requiring him to cooperate with the plaintiff by consenting to any sale produced by the plaintiff, that involved a reasonable profit, within the time, offered by any purchaser ready, able and willing to comply. That the offers of sale hereinbefore alleged, and each and every of them were such sales as required of the defendant acceptance on his part, but notwithstanding all of this, the defendant, for the purpose of conserving his own interest, and in disregard of the plaintiff's rights *Page 152 
under said contract, wrongfully and unlawfully and arbitrarily refused to accept any of said sales, thereby causing this plaintiff to be damaged in the sum of more than $14,500, as hereinbefore alleged, with interest thereon from 14 April, 1926. Wherefore, the plaintiff prays the court that he have and recover judgment against this defendant for the sum of $14,500, and interest from 14 April, 1926; the cost of the action and such other and further relief as to the court may seem just and proper."
The material allegations of the complaint were denied by the defendant. The defendant denied that the plaintiff ever secured and submitted to him any bona fide offers for the purchase of said property, as alleged in the complaint.
The defendant further plead res adjudicata: "That on or about 29 July, 1926, the plaintiff instituted in the Superior Court of Henderson County, North Carolina, a suit against this defendant, in which he sought to recover from this defendant damages for an alleged breach of the identical contract mentioned and described in the plaintiff's complaint and on which this suit is founded. That said suit so instituted in the said Superior Court of Henderson County came on for trial at the March Term, 1928, of the Superior Court of Henderson County and a jury was duly empaneled to try the issues therein joined. That both plaintiff and defendant offered evidence upon the merits of said suit, and at the close of all of the evidence a judgment of nonsuit was entered in said cause. That the plaintiff duly appealed to the Supreme Court of the State of North Carolina from said judgment of nonsuit and said judgment was, by an opinion of said Court, filed on 12 December, 1928, and reported in 196 N.C. 381; said judgment of nonsuit so rendered by the said Superior Court of Henderson County was affirmed. That as will more fully appear by reference to the pleadings in said cause in the Superior Court of Henderson County, North Carolina, the cause of action on which the plaintiff sought to recover in that suit is identically the same cause of action attempted to be set out in the complaint in this suit, and as defendant is advised and believes, said cause having been tried on its merits in the Superior Court of Henderson County, North Carolina, and a judgment having been rendered against the plaintiff in said action, all questions arising out of the contract sued on in this action have become and are now res adjudicata and the plaintiff is barred by said judgment from a further prosecution of this action."
There were additional allegations in the complaint to those in the first action and different evidence in this case from that in the former. There was a judgment of nonsuit in the court below, plaintiff excepted, assigned error and appealed to the Supreme Court. *Page 153 
The question involved:
(1) This is an action on contract, set forth in the complaint, which provides that the plaintiff was to have one-half of the profits arising from the sale of a tract of land "provided a satisfactory sale can be made within 12 months from date." The plaintiff contends that he produced a number of purchasers, ready, able and willing to buy at a price and on terms that were satisfactory to him and that would have proven satisfactory to both if accepted by the defendant, but that the defendant arbitrarily and fraudulently refused to accept said offers of sale for the purpose of defeating the plaintiff of his rights under the contract.
(2) The defendant set up the plea of res judicata. We think the nonsuit should not have been granted by the court below, and there was sufficient evidence to be submitted to the jury, and the principle of res judicata is not applicable.
An action on the contract involved in this controversy was tried in Henderson County and from a judgment of nonsuit therein the plaintiff appealed to the Supreme Court, which was confirmed at the Fall Term, 1928 (see Ingle v. Green, 196 N.C. 381), on the ground that the plaintiff did not allege fraud or arbitrariness. Thereupon the plaintiff brought this action in March, 1929, alleging fraud and arbitrary action, as set forth in the complaint before mentioned.
In Ingle v. Green, supra, this Court said "There is no allegation that the defendant acted fraudulently or arbitrarily in refusing to sell." In the present action the complaint is full, plenary and explicit on this subject. Graves v. O'Connor, post, 231.
In Hampton v. Spinning Co., 198 N.C. at p. 240, we find: "If the Supreme Court affirms the judgment of the trial court, he may under C. S., 415, bring a new action within the period therein specified. But, if upon the trial of the new action, upon its merits, in either event, it appears to the trial court, and is found by such court as a fact, that the second suit is based upon substantially identical allegation and substantially identical evidence, and that the merits of the second cause are identically the same, thereupon the trial court should hold that the judgment in the first action was a bar or res adjudicata, and thus end that particular litigation." Midkiff v. Insurance Co., 198 N.C. 569; Chappell v. Ebert,198 N.C. 575.
It will be noted that in the Hampton case, supra, are these words: "that the second suit is based upon substantially identical allegation and substantially identical evidence." The present action is not based upon substantially "identical allegation." In the former action there *Page 154 
was probata without allegata. There must be allegata et probata. In the present action there is allegata et probata.
In Moses v. Morganton, 195 N.C. at p. 101, it is said: "`A decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal.Harrington v. Rawls, 136 N.C. 65.' Strunks v. R. R., 188 N.C. at p. 568."
As the case goes back for a new trial, there are other questions raised by the able and learned attorneys for the litigants that we need not now consider.
For the reasons given the judgment of the court below is
Reversed.