### STATE v. DOUGLAS GRAYSON ALIAS DOUGLAS GRISSON.

(Filed 24 February, 1954.)

**1. Homicide § 17: Indictment and Warrant § 24—**

Under an indictment for murder in the first degree in the usual form, G.S. 15-144, the State is entitled to introduce evidence that defendant committed the homicide in the perpetration of, or attempt to perpetrate rape, it being incumbent upon defendant if he desires more definite information to request a bill of particulars, G.S. 15-143.

**2. Criminal Law § 31c: Evidence § 51—**

The court's finding that a witness is a medical expert as well as an expert in the field of psychiatry is conclusive when supported by competent evidence.

**3. Constitutional Law § 35—**

Testimony of an expert that defendant was sane within the rule of mental responsibility for crime does not violate defendant's constitutional safeguard against self-incrimination, Article I, Section 11, Constitution of North Carolina, even though it is based upon the witness' personal interview with defendant.

**4. Same—**

The constitutional privilege against self-incrimination protects the accused from the extraction from his own lips against his will of an admission of guilt, and does not preclude testimony as to his bodily or mental conditions when relevant and material, even when obtained by compulsion.

**5. Criminal Law § 33—**

Where the court finds upon the *voir dire* upon supporting evidence that defendant's confession was voluntary, the admission of the confession in evidence will not be held for error on the ground that defendant was insane and had also denied the offense, and that therefore the confession was involuntary, there being evidence for the State tending to show that defendant was sane within the rule of criminal responsibility.

**6. Homicide § 25—**

Evidence of defendant's guilt of murder in the first degree *held* sufficient to be submitted to the jury in this prosecution.

**7. Homicide § 4d—**

When murder is committed in the perpetration of, or attempt to perpetrate rape, the State is not required to prove premeditation and deliberation, G.S. 14-17.

**8. Criminal Law § 81c (2)—**

The court's charge to the jury is to be construed contextually and in its entirety.

**9. Criminal Law § 53d: Trial § 31b—**

An erroneous statement of the law, even though made in stating the contentions of a party, must be held for reversible error.

**10. Homicide § 27b—**

A charge in a homicide prosecution which correctly places the burden upon the State to prove beyond a reasonable doubt defendant's guilt of an unlawful killing of a human being with malice and with premeditation and deliberation, but later places the burden upon the defendant to show that he did not have sufficient mental capacity to premeditate and deliberate, must be held for reversible error.

**11. Criminal Law § 81c (2): Appeal and Error § 39h—**

Conflicting instruction on the burden of proof requires a new trial.

**12. Criminal Law § 5a—**

    The test of mental responsibility is the capacity of defendant to distinguish between right and wrong at the time and in respect of the matter under investigation.

**13. Constitutional Law § 34a—**

    Every person charged with crime has an absolute and fundamental right to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm.

BOBBITT, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Hatch, Special J.,* Special February Term 1953 of BLADEN.

Criminal prosecution upon an indictment drawn in accordance with the words prescribed by G.S. 15-144 charging the defendant with the murder of Thay Lewis White.

Upon arraignment the defendant pleaded Not Guilty.

The evidence for the State tended to show these facts: (1) On the afternoon of 13 September 1952 Thay Lewis White was found dead in a cornfield about fifty feet from her home; (2) she had been brutally beaten by some blunt instrument—there was a large laceration of her forehead with fragments of bone and brain tissue protruding, which head injury caused her death; (3) she had been raped recently; (4) there was a puddle of blood on the kitchen floor, blood on the kitchen walls, blood at the kitchen doors, blood out in the back yard and out to the field where the body was found with blood around it; (5) there was an electric smoothing iron in the house with blood and hair on it, and in the field lying parallel with the body was a piece of wood with blood and hair on one end; (6) Thay Lewis White was 19 years old, had a baby two months old and lived with her husband five miles from Elizabethtown, adjacent to the public road leading from Elizabethtown to Clarkton; (7) when her husband returned home he found their baby in a crib in the bedroom, and after search, his wife dead in the cornfield; (8) about 11:00 a.m. on 13 September 1952 the defendant was seen washing his hands near an old mill adjacent to the road going by Thay Lewis White's home and about a mile and a half from where she lived; (9) that the defendant told several people that he killed Thay Lewis White and raped her twice—once before death, and again immediately after her death; (10) that defendant had sufficient mental capacity on 13 September 1952 to know right from wrong, to know what he was doing, and the nature and consequences of his acts.

The evidence for the defendant tended to show the following. The defendant is an illiterate man from Manassas, Virginia, and on 13 September 1952 was about 24 or 25 or 26 years old. On 23 February 1944,

pursuant to the provisions of the Code of Virginia, Sections 1018 and 1019, as amended by the Acts of the Virginia Assembly 1936 and 1940, the defendant was committed to the State Hospital for the Insane, etc., at Petersburg, Virginia, to be treated and cared for as an insane person. On 31 March 1949, he was discharged from this hospital for the insane as improved. On 30 June 1949 the defendant was admitted by Park Police to the Psychiatric Department of the Gallinger Municipal Hospital, Washington, D. C., for mental observation. He was given a psychometric test, which revealed his mental age to be four years, eleven months, with intelligence quotient of 33 (imbecile). The authorities felt that he could not function outside of an institution. On 14 July 1949 he was discharged to the custody of his mother at Manassas, Virginia, who was to arrange for his placement in a hospital for care of mental defectives.

Defendant came to Elizabethtown with a carnival or circus—the record at one place calls it a carnival, at another a circus—as a dishwasher. That this carnival or show had some naked women performing. He paid fifty cents for admittance. The performance excited his lust. He was fired or released from work for this carnival or circus.

That the defendant had congenital syphilis, *i.e.*, he was born with syphilis. That on 13 September 1952 the defendant had a chronic infection of his brain and meninges due to syphilis, which is a general, permanent and fixed injury of the brain. This condition is progressive and incurable. That on 13 September 1952, and at all times since, the defendant was, and is, insane, and on 13 September 1952, and since, he did not, and does not, have sufficient mind to form a criminal intent, to distinguish between good and evil, and to realize the nature and consequences of his acts; that he was incapable mentally to premeditate and deliberate. That what mind he has comes and goes. That while the State has offered evidence tending to show that he said that he killed and raped Thay Lewis White, he also said a number of times that he had never killed anyone. That while he told Dr. I. C. Long at the State Hospital for the Insane in Goldsboro he killed Thay Lewis White and "dogged her" twice, he also denied killing her to Dr. Long. That State Bureau of Investigation Agent James Bradshaw, who was a witness for the State, testified in the absence of the jury when the court was considering the admissibility in evidence of the purported confessions of the defendant that the defendant "is wide open to suggestion." The defendant did not take the stand. His only witnesses qualified as experts, and testified as to his mental condition.

At the September Term 1952 of the Bladen County Superior Court the Grand Jury of the county returned as a true bill of indictment the indictment on which the defendant was tried. The defendant by reason of poverty was unable to employ counsel, whereupon at that term the Honor-

able Chester R. Morris, Judge Presiding, appointed as counsel for the defendant Messrs. Aaron Goldberg and William K. Rhodes, Jr., both able and experienced lawyers of the New Hanover County Bar, and both engaged actively and extensively in trial work, particularly in criminal cases. At the September Term the case was continued to a subsequent term of court.

A Special Term of Superior Court was held in Bladen County in November 1952. At that term counsel for defendant requested a continuance of the trial of the case to a subsequent term to give them further time to investigate thoroughly the question of defendant's sanity. The court allowed a continuance.

At the January Term 1953 of the Superior Court of Bladen County a jury from Cumberland County was impaneled to try the issue as to whether the defendant had sufficient mental capacity to plead to the bill of indictment. (See *S. v. Sullivan,* 229 N.C. 251, 49 S.E. 2d 458.) The jury returned for its verdict that the defendant had sufficient mental capacity to plead to the bill of indictment.

Verdict: Guilty of First Degree Murder.

To the judgment of death by asphyxiation the defendant appeals to the Supreme Court.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*Aaron Goldberg and William K. Rhodes, Jr., for defendant, appellant.*

PARKER, J. The indictment upon which the defendant was tried was drawn according to the words prescribed by G.S. 15-144. The defendant has nine assignments of error in which he contends that the court erred in permitting the State to introduce evidence tending to show that Thay Lewis White was raped, and in charging the jury that a murder committed in the perpetration or attempt to perpetrate rape shall be deemed to be murder in the first degree, because the indictment did not charge the defendant with committing murder in the perpetration or attempt to perpetrate rape. This Court in *S. v. Mays,* 225 N.C. 486, 35 S.E. 2d 494, has decided this exact point against the defendant's contentions. The bill of indictment contains every necessary averment; there is no variance between *allegata* and *probata.* See also *S. v. Arnold,* 107 N.C. 861, 11 S.E. 990; *S. v. Fogleman,* 204 N.C. 401, 168 S.E. 536. If the defendant desired more definite information he had the right to request a bill of particulars. He made no such request. G.S. 15-143.

At the January Term 1953 of Bladen Superior Court an inquiry was had with a jury from Cumberland County to determine the defendant's ability to plead to the indictment. The court, upon motion of the State,

and over the objection and exception of the defendant, directed that a mental examination of the defendant be made by a witness for the State for the purpose of testifying in court as to the mental condition of the defendant. At the request of the State Dr. D. S. Owen examined the defendant in the Cumberland County jail, and testified at the inquiry in January 1953. In the instant case the State called Dr. Owen as a witness. The court held upon competent evidence that Dr. Owen is a medical expert, as well as an expert in the field of psychiatry. The defendant assigns the court's ruling that Dr. Owen is an expert witness in both fields as error. This assignment of error is without merit. *S. v. Smith,* 223 N.C. 457, 27 S.E. 2d 114; *S. v. Strickland,* 229 N.C. 201, 49 S.E. 2d 469.

The defendant then assigns as error that the court permitted Dr. Owen in the instant case to testify over his objection that in his opinion the defendant on 13 September 1953 was sane, knew what he was doing, knew it was wrong, knew the consequences of his act, and knew the difference between right and wrong as to rape on the body of Thay Lewis White, on the ground that it would be compelling the defendant to give self-criminating evidence in violation of Art. I, sec. 11, of the North Carolina Constitution. The court in overruling the objection stated it was not going to permit Dr. Owen to testify to any conversation that Dr. Owen had with the defendant, but would permit him to state his opinion as to the mental condition of the defendant at the time of his examination. In this case the defendant interposes insanity as one of his defenses. There is no evidence in the Record that any compulsion or force was used in making the examination. The constitutional privilege against self-crimination in history and principle seems to relate to protecting the accused from the process of extracting from his own lips against his will an admission of guilt, and in the better reasoned cases it does not extend to the exclusion of his body or of his mental condition as evidence when such evidence is relevant and material, even when such evidence is obtained by compulsion. *S. v. Garrett,* 71 N.C. 85; *S. v. Graham,* 74 N.C. 646, 21 Am. Rep. 493; *S. v. Thompson,* 161 N.C. 238, 76 S.E. 249; *S. v. Riddle,* 205 N.C. 591, 172 S.E. 400; *S. v. Eccles,* 205 N.C. 825, 172 S.E. 415; *S. v. Cash,* 219 N.C. 818, 15 S.E. 2d 277; *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *Blocker v. State,* 92 Fla. 878, 110 So. 547; *People v. Krauser,* 315 Ill. 485, 146 N.E. 593; *Com. v. Millen,* 289 Mass. 441, 194 N.E. 463; *State v. Nelson,* 92 P. 2d 182; *State v. Cerar,* 60 Utah 208, 207 P. 597; *State v. Coleman,* 96 W. Va. 544, 123 S.E. 580; *Hunt v. State,* 248 Ala. 217, 27 So. 2d 186; *Wymer v. People,* 114 Colo. 43, 160 P. 2d 987; *State v. Cochran,* 356 Mo. 778, 203 S.W. 2d 707; *State v. Myers,* 220 S.C. 309, 67 S.E. 2d 506; 22 C.J.S., Criminal Law, p. 998; Greenleaf on Evidence (16th Ed.), Sec. 469 (e); Wigmore on Evidence (3rd Ed.), Sec. 2265, and 164 A.L.R. Anno., p. 967, *et seq.*

The court sent the jury from the courtroom while it heard testimony on the *voir dire* as to the admissibility in evidence of a purported confession of the defendant that he raped Thay Lewis White twice and killed her. In the absence of the jury Carl C. Campbell was permitted over the objection and exception of the defendant to testify as to such a confession. The defendant assigns this as error. The defendant contends that the confession was inadmissible because the defendant was insane, had the mind of a child not more than six years old, was wide open to suggestion, and also denied killing and raping Thay Lewis White, and therefore his confession was not voluntary. The State offered evidence tending to show that the defendant was sane. The defendant does not contend in his brief that any force or compulsion was used, or that any promises or inducements were made to the defendant. The court found the confession was voluntary. When the jury returned to the courtroom Carl C. Campbell, T. P. Hofler and Sheriff John B. Allen, without objection, testified that the defendant told them separately that he raped Thay Lewis White twice and killed her. Dr. I. C. Long, Superintendent of the State Hospital for the Insane at Goldsboro, and a witness for the defendant, gave without objection similar testimony. The defendant's assignment of error is not sustained. *S. v. Rogers, supra; S. v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84; *S. v. Mays, supra.*

The defendant's assignment of error to the failure of the court to allow his motion for nonsuit is without merit.

The defendant assigns as error this part of the court's charge: "Where one of the defenses is insanity, the burden of proof is on the defendant to prove such insanity, not beyond a reasonable doubt, but to the satisfaction of the jury. Where an independent offense in a criminal action is set up as insanity the burden is on the defendant on the question involved and as in this case of the insanity of the defendant at the time, if you find that he did kill the deceased, the fact of previous insanity accompanied by the presumption of its continuance may be relied upon by defendant to sustain *prima facie* the burden which he assumes by his plea of insanity as a defense; but it cannot be held that the mere fact of insanity prior to the commission of the act alleged to be a crime, although such condition is presumed to continue, releases the defendant of the burden imposed upon him by the law of this State to offer evidence sufficient at least to satisfy the jury that he was insane at the time of the commission of the act and, therefore, not responsible for his act as a crime. The presumption is merely evidentiary and is not conclusive."

Later in its charge the court used this language, which is not excepted to: "The defendant pleads, among his other defenses, that at the time of the alleged killing of the deceased Thay Lewis White that his mind was dethroned and that he did not have mental capacity to distinguish between

right and wrong, *that he did not have the power to premeditate and deliberate upon the nature and consequences of his act* and that in the eye of the law he is excused. The burden of this plea is upon him and not upon the State, to satisfy you of its truth." (Italics added.)

The court charged the jury further: "I charge you further, Gentlemen of the Jury, if the State of North Carolina has satisfied you from the evidence beyond a reasonable doubt, the burden being upon the State, that the defendant Douglas Grayson, with malice and with premeditation and deliberation, and with a calm and deliberate mind at the time of the killing, had a formed premeditated, willful and deliberate design to take the life of the deceased, Thay Lewis White, and did kill the deceased, Thay Lewis White, he is guilty of murder in the highest degree and it would be your duty to so find. I further charge you, Gentlemen of the Jury, that if you are satisfied from the evidence in this case beyond a reasonable doubt, the burden being upon the State, that the defendant Douglas Grayson killed the deceased, Thay Lewis White, with a fixed design, with the deliberate willful intention to perpetrate or attempt to perpetrate the crime of rape or other felony, he would be guilty of murder in the highest degree and it would be your duty to so find."

The court charged on murder in the first degree in two aspects: first, an unlawful killing of a human being with malice and with premeditation and deliberation and, second, murder in the perpetration or attempt to perpetrate rape. When murder is committed in the perpetration or attempt to perpetrate rape, the State is not required to prove premeditation and deliberation. G.S. 14-17; *S. v. Mays, supra; S. v. King,* 226 N.C. 241, 37 S.E. 2d 684.

It is elementary learning that a charge is to be construed contextually and in its entirety. *S. v. Hough,* 227 N.C. 596, 42 S.E. 2d 659; *S. v. Phillips,* 228 N.C. 595, 46 S.E. 2d 720.

When a statement of the contentions presents an erroneous view of the law applicable to the case, it is material error. *S. v. Gause,* 227 N.C. 26, 40 S.E. 2d 463; *S. v. Hedgepeth,* 230 N.C. 33, 51 S.E. 2d 914; *Blanton v. Dairy,* 238 N.C. 382, 77 S.E. 2d 922.

Reading the charge in its entirety, we find that on the aspect of the unlawful killing of a human being with malice and with premeditation and deliberation the lower court placed the burden of proof to satisfy the jury on premeditation and deliberation on the State and then later on put the burden of proof on the defendant to prove that he did not have sufficient mental capacity to premeditate and deliberate upon the nature and consequences of his act. These conflicting instructions on the burden of proof require a new trial. *S. v. Floyd,* 220 N.C. 530, 17 S.E. 2d 658; *S. v. Patterson,* 212 N.C. 659, 194 S.E. 283; *S. v. Morgan,* 136 N.C. 628, 48 S.E. 670.

STATE *v.* GRAYSON.

In this State where the defense is insanity the test of responsibility "is the capacity to distinguish between right and wrong at the time and in respect of the matter under investigation." *S. v. Lamm,* 232 N.C. 402, 61 S.E. 2d 188. The test has been phrased also in these words that a person is legally insane where he is laboring under such a defect of reason "as to be incapable of knowing the nature and quality of the act he is doing, or, if he does know this, incapable of distinguishing between right and wrong in relation to such act." *S. v. Swink,* 229 N.C. 123, 47 S.E. 2d 852, where the cases are cited. In the *Swink case* it was held error for the court to charge the jury that the prisoner's plea of insanity must be "clearly established," because it imposed upon the defendant the burden of proving his insanity by a higher degree of proof than required by law. In the instant case the court charged that the burden of proof was on the defendant to prove "that he did not have the power to premeditate and deliberate upon the nature and consequences of his acts." This is going much further than anything we have said heretofore or approved.

It is not necessary for us to pass upon the exceptions to the failure of the court to grant defendant's motion for a change of venue, and when that was denied, to its refusal to summon a jury from another county, as a new trial must be granted for error in the charge. However, we wish to emphasize what we said in *S. v. Carter,* 233 N.C. 581, 65 S.E. 2d 9: "Every person charged with crime has an absolute right to a fair trial. By this is meant that he is entitled to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm." Such absolute right is fundamental in both criminal and civil cases in all jurisdictions in this nation.

We have carefully considered this case with a full realization of its importance to the State and to the defendant. After such consideration we are of the opinion that for prejudicial error in the charge, a new trial must be ordered.

New trial.

BOBBITT, J., took no part in the consideration or decision of this case.